UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                  Case No. 22-CV-

                                                                        **Jury Trial Demanded**

LEAF PROPERTY INVESTMENTS, LLC,
SAM JAMES LEAF, and
DENNIS PARKER,

    Defendants.

## COMPLAINT

The United States alleges as follows:

1.     The United States of America brings this action to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3631 (hereinafter "Fair Housing Act"). The United States brings this action pursuant to 42 U.S.C. § 3612(o) on behalf of an adult male under the "John Doe" pseudonym (hereinafter "Complainant") for discriminating against him because of his sex, including sexual orientation, and disability.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1345 and 42 U.S.C. § 3612(o)(1).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims alleged in this complaint occurred in the Eastern District of Wisconsin and the defendants and property at issue are located in this district.

## THE PARTIES AND THE SUBJECT PROPERTY

4. Plaintiff is the United States of America (hereinafter "the United States").

5. Defendant Leaf Property Investments, LLC (hereinafter "LPI"), is a Wisconsin domestic limited liability company and owner of the rental properties located at 1502-1504 East Royall Place, Milwaukee, Wisconsin 53202 (hereinafter "Subject Property").

6. Defendant LPI is also the owner of a rental property located at 1511 East Royall Place, Milwaukee, Wisconsin 53202 (hereinafter "1511 East Royall Place"), which is across the street from the Subject Property.

7. Defendant Sam James Leaf (hereinafter "Leaf") is a resident of Milwaukee, Wisconsin. Leaf is the registered agent of LPI and manager of the LPI-owned rental properties, including the Subject Property and 1511 East Royall Place. At all times relevant to this complaint, Leaf managed the Subject Property and visited approximately once a week to inspect and collect rent.

8. Defendant Dennis Parker (hereinafter "Parker") is a resident of Milwaukee, Wisconsin. At all times relevant to this complaint, Parker was the onsite manager for the LPI-owned rental properties, including the Subject Property and 1511 East Royall Place. In that capacity, Parker acted as an agent with the consent of LPI and Leaf. Parker had actual and apparent authority to manage the properties on behalf of LPI and Leaf, and he acted within the scope of his position as the on-site manager of those two rental properties.

## FACTUAL ALLEGATIONS

9. Complainant is an adult male and resident of the State of Wisconsin.

10. Since at least 2013, LPI has owned rental properties in and around Milwaukee, Wisconsin, including the Subject Property and 1511 East Royall Place.

11. The Subject Property is a rooming house with 19 rental units. Each unit is a studio with a kitchen, and the tenants share a bathroom and living space.

12. The rental units at the Subject Property are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

13. At all times relevant, Defendant Parker was LPI's and Leaf's on-site manager for the Subject Property and 1511 East Royall Place.

14. As the on-site manager for the Subject Property, Parker's duties included, but were not limited to, handling rental inquiries; showing prospective applicants available units for rent; receiving applications for tenancy; interacting with tenants on rental-related issues; handling tenant complaints and needs; keeping keys to access tenants' units; performing maintenance at the property, including some repairs and other needs in tenants' units; and enforcing lease provisions.

15. Defendant Parker resided at 1511 East Royall Place, where he received discounted rent in exchange for the on-site manager services he provided for LPI and Leaf at the Subject Property and 1511 East Royall Place.

16. Complainant is an adult gay male with bipolar disorder, post-traumatic stress disorder ("PTSD"), depression, and anxiety. His impairments substantially limit one or more of his major life activities, including, but not limited to, his ability to take care of himself, interact

with others, work, and sleep. He also has a record of having such impairments, as defined by the Fair Housing Act, 42 U.S.C. § 3602(h)(1)-(2).

17. Beginning in or about 2012, Complainant was approved to receive social security disability benefits ("SSDI") because the United States Social Security Administration determined that he had one or more medical conditions that significantly limited his ability to do basic work-related activities. At all times relevant to this complaint, Complainant received SSDI.

18. On or about April 4, 2019, Complainant telephonically responded to a rental advertisement for a unit at the Subject Property and spoke by telephone with a person he later learned was Defendant Parker.

19. During that conversation, Complainant informed Parker that he was a gay male and also informed him that he had a disability. Complainant disclosed this information in an effort to learn whether he would be welcomed as a tenant at Defendants' property.

20. Parker told Complainant that his sexual orientation and disability would not pose a problem and later showed Complainant Unit # 4 at the Subject Property. Defendants approved Complainant to rent that unit on a month-to-month basis.

21. Complainant's tenancy at Unit # 4 of the Subject Property began on or about April 5, 2019, and ended on or about July 1, 2020.

22. In the first few months of the tenancy Complainant and Defendant Parker were on good terms and at times friendly. During this time, Complainant told Defendant Parker he had been previously sexually assaulted and raped.

23. Beginning in December 2019, and continuing throughout most of Complainant's tenancy, Parker subjected Complaint to discrimination on the basis of sex and disability, including severe, pervasive and unwelcome harassment on multiple occasions.

24. Beginning in December 2019, Defendant Parker subjected Complainant to unwelcome and unwanted sexual comments that were egregious, offensive, and violent. Some of these comments made Complainant feel fearful and threatened.

25. For example, in early December 2019, Parker told Complainant: "I would love to fuck you until you scream," and "You should give me a blowjob" or words to that effect. These comments were unwelcome and unwanted.

26. On multiple occasions in December 2019, Parker publicly verbally harassed the Complainant because of Complainant's sexual orientation by yelling derogatory and offensive statements to Complainant from an outside balcony of the LPI-owned rental property at 1511 East Royall Place where Parker resided, which was across the street from Complainant's unit at the Subject Property. For example, Parker used epithets and yelled at Complainant that "God hates . . . faggots" or words to that effect.

27. On December 9 and 11, 2019, Parker also made unwelcome, sexually violent statements to Complainant through text messages, including comments such as "Grab your ankles daddy is coming to get some," "What do you think about anal fisting," and "I have a bowling [p]in with your name on it."

28. On December 11, 2019, after being subjected to a number of harassing verbal statements or texts from Parker as described above, Complainant sent Parker a text message noting that Complainant had previously been sexually assaulted and raped, and that some of Parker's statements triggered Complainant's PTSD. Later that day, Parker sent Complainant a

text message, stating "[a]lways a third time cry a river are your pathetic crys [sic] answered fuck no . . . Grow a set. . . ."

29. During the rest of the month of December 2019, despite Complainant's text message stating Parker's messages were triggering his PTSD, Parker continued to send Complainant numerous harassing text messages, many of which included harassment based on sex. These messages included comments such as, but not limited to:

"Are you still on your period [ ]";

"Why u being such a straight up punk bitch? Are your feelings hurt or our your nipples sore. Grow a set pussy";

"[G]uess what you're a punk bitch sick homosexual and I don't require your friendship. Fuck you bitch ass faggot";

"Try your drama queen faggot fucking sick ass against the Bible fuck your family bs somewhere else";

"Your a fag a abomination against Jesus fuck you";

"Go fuck yourself shove a hamster up your ass";

"You been fucked in the ads [sic] so much you think it's okay and you can't keep your bitch ass pansy queer clear homosexual are sick and a disease";

"Fuck u cocksucker try your bs in January"; and

"Gay pride get back in the closet."

30. Parker's numerous harassing text messages sent to Complainant also included harassment based on disability, particularly through comments about Complainant's apparent disability-related work limitations and receipt of SSDI. These messages included comments such as, but not limited to:

"U weak and retarted [*sic*]. Look how u shake and act around people you are a loser a user tired of caring your wright [*sic*]. Get off your lazy ass and work quit scamming off the government";

"Nobody likes you because you're a constant complaining piece of shit loser fucking no job having ass bitch no free ride Democrats r [*sic*] loser";

"Little fag parade scam off the government you can work you're no better than a . . . fucking lazy POS and judge others"; and

"Fuck you your [*sic*] a weak bitch and a coward that's why you have so many problems in life";

31. On December 21, 2019, Parker sent Complainant a text message stating that Parker understood Complainant was going to contact Defendant Leaf about Parker's harassment. Parker then continued his harassment of Complainant by sending him text messages containing various offensive statements directed to Complainant's sexual orientation as a gay male and his disability, including referring to him as "princess" and suggesting Complainant end his tenancy.

32. On December 22, 2019, Complainant contacted the Milwaukee Police Department to report Parker's harassment.

33. On December 22, 2019, the police visited Parker's home to speak with him about his harassment of Complainant. Parker refused to open his door, yelled "Go fuck yourself" to the officer, and was issued a $195.00 citation for disorderly conduct that was placed under the door of his unit.

34. On January 24, 2020, Parker continued his harassment of Complainant by sending him over 28 text messages in retaliation for Complainant contacting the police about Parker's harassment and the monetary penalty of the citation that the police issued to Parker on December 22, 2019. These text messages to Complainant included: 1) telling Complainant that his "little stunt calling the police" in December 2019 to report the harassment cost Parker $195, then immediately giving Complainant notice to vacate his unit; 2) advising that Parker and Leaf

7

Case 2:22-cv-01037-BHL   Filed 09/09/22   Page 7 of 15   Document 1

talked every day and that Leaf gave Parker permission to evict Complainant; 3) threatening to damage or give Complainant's personal belongings to another person if Complaint did not vacate his unit as directed; 4) alleging that an infestation of bed bugs in Complainant's unit that Complainant had previously complained about was attributable to Complainant's sexual activity; and 5) making offensive and threatening comments directed at Complainant's sexual orientation and disability.

35. On January 24, 2020, Complainant texted Parker asking Parker to leave him alone.

36. On or about January 26, 2020, Parker verbally harassed Complainant by yelling the following statement outside Complainant's unit as he banged on and broke storm windows of Complainant's unit: "God hates queers and queers go to hell."

37. In February 2020, Parker advised Complainant via text message that he would assist with the bed bug infestation in Complainant's unit.

38. On February 26, 2020, Parker texted Complainant violent messages, including messages that referred to Complainant as a "jew" and included an image of a person who had been lynched, over which image Parker wrote Complainant's first name. With respect to the image of the lynched person, Parker's text message stated, "He voted Democratic, good ol days."

39. On February 27, 2020, Parker sent 15 harassing text messages to Complainant, including referring to Complainant as a "faggot," and as "retarded." Parker also directed Complainant to vacate his unit, stating that he and Leaf "had a lengthy discussion" and it was best if Complainant found a new home. In this series of text messages, Parker told Complainant to move out by March 1, 2020, and in another message, requested he move by April 2020.

40. On February 28 and 29, 2020, Parker sent a text messages to Complainant advising that he and Leaf would like Complainant to vacate the Subject Property by April 1, 2020, because of "the constant problems and headaches" Complainant caused. Parker also sent Complainant a text message stating "Bye bye loser . . . ."

41. Throughout March of 2020, Complainant sent text messages to Parker regarding the continuing bed bug infestation.

42. On March 5, 2020, in response to Complainant's message regarding the bed bug infestation and a warning that Complainant would contact the city about the bed bugs, Parker sent Complainant a text message advising that Leaf "would like to see you move he is not renewing your lease and you are hereby given your 30 day notice to vacate the property. Good luck and wish you well. [Leaf's] words not mine."

43. On March 20, 2020, Complainant contacted Leaf regarding the bed bug infestation, stating that the bed bugs were back and requesting reimbursement for costs related to cleaning his personal belongings due to the bed bugs.

44. Beginning on March 17, 2020 and continuing though May 2020, Parker, Leaf and Complainant texted regarding the bed bug infestation and what treatments should be used to remedy the situation.

45. On April 13, 2020, Complainant told Leaf via text message that Parker threatened to evict him and that Complainant could prove that with Parker's text messages.

46. Due to the ongoing harassment and the bed bug infestation, on May 29, 2020, Complainant gave Leaf notice that he was vacating his unit in 30 days, and Leaf agreed to Complainant's request to vacate on July 1, 2020.

9

47. On June 21, 2020, Parker punched Complainant in the groin and stated to Complainant, "Hope you enjoyed the sexual assault." Complainant reported the incident to the police on June 23, 2020, and the police issued Parker a citation for assault and battery and a fine of $376.00.

48. On June 23, 2020, Complainant sent Leaf a text message stating that Parker "has been harassing [him] for a long time," and that Parker "punched [him] hard in the Balls Sunday evening." Complainant also stated to Leaf that if Parker "touches [him] again in anyway or continues to harass [him], [he] will call the cops, press charges and file a restraining order. This harassment needs to end NOW!" Leaf did not immediately respond to this message.

49. On June 25, 2002, Complainant sent Leaf a text message noting, in part, that Parker had represented that he had Leaf's permission to remove, destroy, sell, or discard Complainant's personal property and that Parker continued to yell derogatory statements from his balcony, including "God HATES . . . fagots." Later that day, Leaf advised Complainant via text message that he would tell Parker to stay away from Complainant, not to talk to or approach Complainant and, "[l]eave you in peace for the next week."

50. On or about July 1, 2020, Complaint vacated the Subject Property.

51. The discriminatory incidents described herein occurred while Parker was exercising his authority as property manager and as an agent of LPI and Leaf at the Subject Property and 1511 Royall Place.

52. LPI and Leaf are vicariously liable for the actions of Parker. Parker acted as an agent of LPI and Leaf, and LPI and Leaf are responsible for Parker's actions regardless of whether they knew or should have known of the discriminatory conduct.

10

Case 2:22-cv-01037-BHL   Filed 09/09/22   Page 10 of 15   Document 1

53. Defendant Leaf is liable for the actions of Parker. Parker acted as an agent of Leaf and LPI, and Leaf knew or should have known of Parker's discriminatory conduct, had the authority to take preventative and corrective action, and failed to take reasonable preventative or corrective measures.

54. The above-described actions and conduct of Parker caused Complainant to suffer physical harm, fear, anxiety, emotional distress, and monetary damages.

## HUD COMPLAINT AND CHARGE OF DISCRIMINATION

55. On September 23, 2020, Complainant filed a verified Housing Discrimination complaint with the United States Department of Housing and Urban Development ("HUD") , which was subsequently amended, alleging that LPI, Leaf, and Parker committed discriminatory housing practices against him based on sex and disability in violation of the FHA.

56. Pursuant to the requirements of 42 U.S.C. § 3610a) and (b), the Secretary of HUD (hereinafter "Secretary") conducted and completed an investigation of the administrative complaints.

57. Based on information gathered in the HUD investigation, the Secretary, pursuant to 42 U.S.C. § 3601(g)(1), determined that reasonable cause existed to believe that LPI, Leaf, and Parker discriminated against Complainant and violated the Fair Housing Act.

58. On March 23, 2022, the Secretary issued a Charge of Discrimination pursuant to 42 U.S.C. § 3610(g)(1), charging LPI, Leaf, and Parker with engaging in discriminatory housing practices, alleging each violated the Act based on sex and disability.

59. On April 5, 2022, Complainant elected to have the charges resolved in a federal civil action pursuant to 42 U.S.C. § 3612(a).

60. On April 7, 2022, the Administrative Law Judge assigned to the case issued a Notice of Election to Proceed in United States District Court and terminated the administrative proceedings.

61. On April 12, 2022, the Secretary authorized the Attorney General to commence and maintain a civil action on behalf of Complainant. 42 U.S.C. § 3612(o)(1).

62. On April 27, 2022, the parties executed a tolling agreement to toll the statute of limitation for filing this complaint from May 5, 2022, to June 5, 2022. On May 31, 2022, the parties executed an amendment to the tolling agreement extending the statute of limitation for filing this complaint from June 5, 2022, to July 8, 2022. On July 6, 2022, the parties executed a second amendment to the tolling agreement extending the statute of limitation for filing this complaint from July 8, 2022, to September 9, 2022.

## **VIOLATIONS OF THE FAIR HOUSING ACT**

63. The United States realleges and incorporates by reference the allegations set forth above.

64. By the actions and statements described above, Defendants have:

   a. Discriminated in the rental, or otherwise made available or denied, a dwelling to a renter on the basis of the sex and disability of that renter, in violation of 42 U.S.C. §§ 3604(a) and 3604(f)(1)(A);

   b. Discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, on the basis of sex and disability, in violation of 42 U.S.C. §§ 3604(b) and 3604(f)(2)(A);

c. Made statements with respect to the rental of a dwelling that indicated a preference, limitation, or discrimination on the basis of sex and disability or an intention to make such preference, limitation, or discrimination, in violation of 42 U.S.C. § 3604(c);

d. Coerced, intimidated, threatened, or interfered with a person in the exercise or enjoyment of, or on account of the person's having exercised or enjoyed, rights granted or protected by 42 U.S.C. § 3604, in violation of 42 U.S.C. § 3617; and

e. Retaliated against a person because that person reported a discriminatory practice to a housing provider or any other authority. 42 U.S.C. § 3617.

65. As a result of Defendants' conduct, Complainant has been injured and is an "aggrieved person" as defined by 42 U.S.C. 3602(i).

66. LPI and Leaf are vicariously liable for discriminatory practices by their employee or agent Parker. Parker acted as an agent of Defendants LPI and Leaf. These Defendants knew or should have known of Parker's discriminatory conduct, had the authority to take preventative and corrective action, and failed to take reasonable preventative or corrective measures.

67. The Defendants' discriminatory conduct was intentional, willful, or taken in reckless disregard of the rights of the Complainant.

## **PRAYER FOR RELIEF**

WHEREFORE, THE United States requests that the Court enter an Order that:

a. Declares that the Defendants' discriminatory practices violate the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*;

b. Enjoin the Defendants, their agents, employees, and successors, and all other persons in active concert or participation with them from:

    i. Discriminating on the basis of sex and disability, including engaging in sexual harassment, in violation of the Fair Housing Act;

    ii. Discriminating in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, on the basis of sex or disability;

    iii. Stating any preference, limitation, or discrimination on the basis of sex or disability;

    iv. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, Complainant to the position he would have been in but for the discriminatory conduct; and

    v. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future;

c. Awards monetary damages to Complainant pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1); and

d. Awards such additional relief as the interest of justice may require.

Dated: September 9, 2022

|  |  |
|---|---|
|  | MERRICK B. GARLAND<br>Attorney General |
| RICHARD G. FROHLING<br>United States Attorney | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
|  | SAMEENA SHINA MAJEED<br>Chief |
|  | TIMOTHY J. MORAN<br>Deputy Chief |
| */s/ Charles A. Guadagnino*<br>Assistant United States Attorney<br>United States Attorney's Office<br>Eastern District of Wisconsin<br>Wisconsin Bar No. 1018829<br>517 East Wisconsin Avenue, Rm 530<br>Milwaukee, WI 53202<br>Phone: (414) 297-1745<br>Fax: (414) 297-4394<br>charles.guadagnino@usdoj.gov | */s/ Lauren M. Marks*<br>Trial Attorney<br>United States Department of Justice<br>Civil Rights Division<br>Housing and Civil Enforcement Section<br>Michigan Bar Number: P77691<br>950 Pennsylvania Avenue, NW – 4CON<br>Washington, DC 20530<br>Phone: (202) 353-6059<br>Fax: (202) 514-1116<br>lauren.marks@usdoj.gov |